UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

| | |
|---|---|
| MARVIN JOHNSON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 11-CV-154-KKC |
| | ) |
| V. | ) |
| | ) |
| J.C. ZUERCHER, Warden, *et al.*, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) |

\*\* \*\* \*\* \*\* \*\*

Marvin Johnson is currently incarcerated in the Federal Correctional Institution at Terre Haute, Indiana. Johnson, proceeding without counsel, has filed a civil rights complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against prison officials at the United States Penitentiary-Big Sandy in Inez, Kentucky, where he was formerly incarcerated. [R. 1] Because Johnson has been granted pauper status [R. 7] and because Johnson is asserting claims against government officials, the Court now screens his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. These sections require a district court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id.*; *see also McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). Because Johnson's *Bivens* claims are time-barred, his complaint will be dismissed.

On or about May 20, 2009, Johnson was transferred to USP - Big Sandy, where he was assigned to a cell with a Muslim inmate. He was informed by his Muslim cell-mate that since he was not a Muslim, he could not remain in that cell because it belonged to the Muslim community

and that only Muslim inmates could occupy it. Johnson states that it was further explained to him that at USP-Big Sandy, different groups of inmates controlled different cells on the compound and that since he was not a member of one of these organized inmate groups, in order for him to have a permanent cell, he would have to purchase a cell from the group that controlled that cell. Johnson claims that it was generally understood that different groups of organized inmates exercising control over different cells was a longstanding and well-settled practice at the prison, amounting to an unspoken rule of which prison officials had knowledge and accepted. But this unwritten rule was never discussed, and no one complained about it until he did.

  Johnson also alleges that his Muslim cell-mate informed him that he would be leaving the prison in a few months and that in order for Johnson to continue residing in that cell afterwards, he would have to purchase it. Johnson claims that he accepted his cell-mate's offer and purchased the cell from him for $100.00. Johnson states that about two weeks before the Muslim cell-mate was scheduled to leave the prison, he (the Muslim cell-mate) was placed in segregation for a rule violation. Shortly thereafter, the Muslim community laid claim to the cell. Johnson states that he informed the Muslims that he had purchased this cell from his Muslim cell-mate but that the Muslim cell-mate subsequently denied that such a transaction had occurred. Johnson says that that is when his problems began.

  First, he says that the Muslims told him in no uncertain terms that he must vacate this cell and that he complied. However, Johnson moved out of the cell without first obtaining the consent of his prison Case Manager, Ms. Brown. Johnson states that he promptly notified Brown of the move and explained to her the reason for the move. Johnson says that because he did not first obtain Brown's permission to vacate the cell, she ordered him to move back into the cell regardless of the

consequences. Johnson refused to return to the cell, resulting in a meeting in the lieutenant's office, which culminated in Johnson's moving back into the Muslim cell.

Johnson says he explained to the Muslims that prison officials had ordered him to return to the cell and that they agreed to be patient with him and to give him some time to make arrangements to vacate the cell again. Johnson consulted with his prison Counselor, Mr. Parker, who agreed that Johnson could relocate to a different cell. However, Parker also ordered Johnson's Muslim cell-mate to vacate that cell, advising that the cell would be closed for at least six months. Parker also issued a memorandum to all inmates advising that no inmate could hold a cell for a cell-mate who had been placed in segregation or was absent from the cell for an extended time for any other reason. Johnson alleges that the Muslim community concluded that Parker issued this memorandum because Johnson had disclosed to prison officials the control the Muslims exercised over certain prison cells, and they labeled him a snitch. Consequently, Johnson states that unbeknownst to him, he became a marked man within the Muslim community, resulting in his being attacked by Muslim inmates.

Johnson claims that on September 26, 2009, he was attacked by a group of Muslim inmates wielding knives or homemade weapons. During the assault Johnson was stabbed and suffered significant cuts and bruises to his forehead, eyes, arms, neck and back. [R. 1-1 at 20] In his papers, Johnson appears to claim that prison officials failed to prevent the assault by the Muslim inmates and that Senior Officer Todd, the first prison official to witness the attack, failed to act promptly to prevent other inmates from joining in the attack. Johnson seeks compensatory damages.

The day after the attack, Johnson was charged in an Incident Report with a 201 Violation (fighting with another person). This charge was referred to a Disciplinary Hearing Officer ("DHO") for hearing. Johnson was advised of his rights, and a DHO hearing was conducted on October 1,

3

2009. Johnson pled not guilty to the offense, stating that he was attacked and was merely defending himself. On April 8, 2010, the DHO issued a report finding Johnson guilty of the offense and imposed the following sanctions: (1) 30 days of Disciplinary Segregation; (2) loss of commissary privileges for 3 months; and (3) a recommended Disciplinary Transfer to another institution. Johnson was later transferred to the United States Penitentiary in Terre Haute, Indiana.

Johnson did not file an inmate grievance regarding the attack until June 6, 2011, when he complained that officer Todd failed to take reasonable measures to protect him from violence at the hands of other prisoners. Johnson filed a second grievance with the warden on June 8, 2011, complaining that the officials and warden at USP-Big Sandy exhibited deliberate indifference to his safety. Both grievances were denied as untimely because they were not filed within twenty days of the incident, determinations affirmed at both the regional and national level.

Because Johnson has not stated whether he is suing the defendants in their individual or official capacities, the Court will assume that he is suing the defendants in both capacities. However, the remedy implied in *Bivens* does not permit suit against a federal official in his or her official capacity because such a claim essentially seeks damages from the United States itself, a claim prohibited by sovereign immunity. *Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002). Further, any *Bivens* claims against the defendants in their individual capacities are time-barred. The limitations period for constitutional torts committed in Kentucky is one year. Ky. Rev. Stat. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). Johnson's claim accrued on September 26, 2009, the date he was attacked and injured. However, Johnson did not file suit until September 23, 2011, nearly two years later, well after the statute of limitations had run. The limitations period is ordinarily tolled while a prisoner exhausts administrative remedies, but Johnson

filed his prison grievances on June 6, 2011, and June 8, 2011, respectively, well after the limitations period had already expired. Because the allegations in Johnson's complaint affirmatively establish that his claim is barred by the statute of limitations, dismissal is appropriate upon initial review. *Jones v. Bock*, 549 U.S. 199, 215 (2007) (*quoting Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) ("A complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face.").

Accordingly, it is **ORDERED** as follows:

1. Marvin Johnson's complaint [R. 1] is **DISMISSED WITH PREJUDICE.**

2. The Court will enter an appropriate Judgment.

3. This matter is **STRICKEN** from the docket.

Dated this 26th day of July, 2012.

Signed By:
*Karen K. Caldwell*
United States District Judge